NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

BEHNAM A.,

    Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

</td><td>

Civil Action No. 24-07349 (RK)

**OPINION**

</td></tr>
</table>

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Behnam A.'s[1] ("Behnam" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Behnam's request for a period of disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I.      BACKGROUND

In this appeal, the Court must answer the following question: Does substantial evidence support Administrative Law Judge Trina Moore's ("Judge Moore") determination that Behnam was not disabled?

### A.      PROCEDURAL POSTURE

Behnam filed an application for a period of disability and Social Security disability benefits

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

in 2016, alleging an onset date of May 15, 2005. (Administrative Record ("AR") at 450.)[2]

Behnam's date last insured was December 31, 2006.[3] (*Id.* at 17.) On that date, Behnam was 54

years old, which is defined as an individual closely approaching advanced age. (*Id.* at 32 (citing

20 C.F.R. § 404.1563).) It bears repeating: Behnam filed for disability insurance benefits in 2016

claiming that he was disabled a decade before—from May 15, 2005 through December 31, 2006.

(*Id.* at 17.)

The Social Security Administration (the "Administration") initially denied Behnam's

application. (*Id.* at 127–133.) Behnam then requested a hearing before an Administrative Law

Judge ("ALJ"). (*Id.* at 171–172.) After two hearings took place at which Behnam appeared without

counsel (*id.* at 252–281), a subsequent hearing was scheduled for January 9, 2018. (*Id.* at 231.)

Because Behnam did not appear at the January hearing, an ALJ dismissed his appeal on February

5, 2018. (*Id.* at 134–138.) The dismissal was initially affirmed by the Administration's Appeals

Council. (*Id.* at 139–142.) However, Behnam appealed to the United States District Court, (*id.* at

143–148); *see also Behnam A. v. Comm'r of Soc. Sec.*, No. 20-532 (D.N.J.), and the Commissioner

ultimately consented to remand the case so that Behnam would have the opportunity to be heard.

(*Id.* at 149–150.)

On July 25, 2022, Judge Moore held a virtual hearing regarding Behnam's claim of

disability. (*Id.* at 53–71.) Behnam, represented by counsel, appeared and testified at that hearing.

(*Id.*) A supplemental virtual hearing was held on March 29, 2023 wherein Behnam and a vocational

expert, Amy Vercillo, appeared and testified. (*Id.* at 42–52.)

---

[2] The Administrative Record ("AR") is available at ECF Nos. 4-1 through 4-9. This Opinion will reference only page numbers in the Administrative Record without the corresponding ECF numbers.

[3] The "Relevant Period" is thus May 15, 2005 through December 31, 2006. (*See* AR at 17.)

On April 21, 2023, Judge Moore issued a written decision finding that Behnam was not disabled. (*Id.* at 16–34.) The Administration's Appeals Council denied Behnam's request to review Judge Moore's decision. (*Id.* at 1–7.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on the docket on August 27, 2024. (ECF No. 4.) Behnam then filed his moving brief (ECF No. 5), the Commissioner filed an opposition (ECF No. 7), and Behnam replied (ECF No. 8).

### B.    JUDGE MOORE'S DECISION

In her April 21, 2023 decision, Judge Moore held that Behnam was not disabled under the prevailing Administration regulations during the Relevant Period, which predated Judge Moore's decision by almost twenty years. (*See generally* AR at 16–34.) To reach this decision, Judge Moore analyzed Behnam's application under the five-step process for determining whether an individual is disabled as set forth in 20 C.F.R. § 404.1520(a). At Step One, Judge Moore found that Behnam had not engaged in substantial gainful activity during the Relevant Period. (*Id.* at 19 (citing 20 C.F.R. §§ 404.1571 *et seq.*).) At Step Two, Judge Moore found that Behnam suffered from several severe impairments: depressive disorder, attention deficit-hyperactivity disorder ("ADHD"), and panic disorder.[4] (*Id.* (citing 20 C.F.R. § 404.1520(c)).)

At Step Three, Judge Moore concluded that Behnam did not have an "impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 22 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) Judge Moore determined Behnam had

---

[4] Plaintiff does not appear to challenge Judge Moore's findings at Steps One and Two. (*See* ECF No. 5 at 19 ("The ALJ properly found that Plaintiff had depressive disorder, panic disorder, and attention deficit hyperactivity disorder (ADHD), and that these conditions were severe medically determinable impairments through the date last insured."). Because this appeal primarily concerns Judge Moore's determinations at Steps Three through Five, the Court will summarize in greater detail these aspects of her decision.

only "moderate limitation[s]" with respect to (i) understanding, remembering or applying information, (ii) interacting with others, (iii) concentrating, persisting, or maintaining pace, and (iv) adapting or managing oneself. (*Id.* at 22–26.) Treatment records from the Mental Health Association of Westchester (the "MHA Notes") prior to the date last insured indicated Behnam had a "mildly" anxious affect with an "aloof/emotional distanced" stance and that he was "a little overwhelmed and restricted in range (affect)." (*Id.* at 23–25 (citing *id.* at 1105, 1108).) However, prior to the date last insured, the MHA Notes also indicated Behnam exhibited "a willingness to learn," "rapt attention," and "a stable, calmer, and euthymic mood with 'no flavor of hypomania.'" (*Id.* (citing *id.* at 1106, 1110).) One note prior to the date last insured described Behnam as "a little better" compared to a "significant depressive dip" in a prior week. (*Id.* (citing *id.* at 1108).)

> Judge Moore also summarized what the available medical evidence did *not* reveal:
>> The record, prior to the date last insured, also fails to document session observations/examination findings of abnormal thought processes, a formal thought disorder, impaired memory, or deficits or abnormality in terms of alertness or orientation . . . homicidal ideation, aggressive, hostile or angry behavior, or deficits or abnormality in terms of . . . cooperation, speech, or eye contact . . . abnormal perceptions . . . or deficits or abnormality in terms of . . . psychomotor activity.

(*Id.*) She further observed the record failed to document "any noted difficulty" by Behnam with memory, social interaction, or attention/concentration "that hindered or prevented the completion of the [counseling] appointments that he attended." (*Id.* at 22–25.)

In reviewing Behnam's own reports of his symptoms, Judge Moore acknowledged Behnam testified to a mental health hospitalization in 1984, more than twenty years before the Relevant Period. (*Id.* (citing *id.* at 59).) She also acknowledged Behnam's reports of severe depression in the immediate aftermath of the September 11, 2001 attacks. (*Id.* (citing *id.* at 60).) Behnam—who holds a doctorate in electrical engineering—further testified to sleepiness at work, to the point of

4

having to take naps on lunch breaks, and to having "erratic sleep, dizziness, vomiting, and losing interest in things, not being able to think or concentrate, being suicidal, and not being able to leave his home" for one year following the September 11 attacks. (*Id.* (citing *id.* at 61–62).)

However, Judge Moore also gave credence to Behnam's testimony that he was able to leave his home and apply for jobs a year after the September 11 attacks. (*Id.* (citing *id.* at 62).) He reported that in 2005—when the Relevant Period began—he was continually depressed, caused by his inability to find a job and his daughter having been involved in an accident. (*Id.* (citing *id.* at 62–63).) Nonetheless, Behnam reported he was able to go out at times with his wife. (*Id.* (citing *id.* at 64).) Further, Judge Moore noted an MHA Note from January 2005 indicated Behnam had "some promising" job interviews lined up.[5] (*Id.* at 22–24 (citing *id.* at 1105).)

Turning to the precursor to Step Four, Judge Moore concluded that Behnam had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but that any job he performed must be limited in specified non-exertional ways:

> Never climbing ladders, ropes, or scaffolds. Avoiding all exposure to hazards such as unprotected heights and moving mechanical parts. Retains the ability to carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions. No assembly line or production rate pace work. No work in tandem. Occasional interaction with co-workers and supervisors. No customer service work. Able to tolerate occasional changes in the work setting and work processes.

(*Id.* at 27.) She found Behnam's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Behnam's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record":

---

[5] Judge Moore also observed that Behnam was able to participate in the hearings conducted before her "without any noted difficulty." (*Id.* at 23–25.)

> In fact, despite symptoms and potential/alleged medication side effects, other than a reported history of one hospitalization due to mental health prior to the alleged onset date, the record reveals an otherwise conservative, albeit multi-formed, course of treatment and a broad range of normal, albeit with some abnormal findings through the date last insured.

(*Id.* at 27–28.)

Judge Moore only gave "some weight" to letters—one of which is dated August 2, 2022—received from a mental health provider, Dr. Alexander Lerman, M.D., who treated Behnam "approximately eight times" for major depressive disorder from October 2000 to April 2003. (*Id.* at 30 (citing *id.* at 881, 1309).) Judge Moore observed that "no treatment notes from Dr. Lerman were provided" and that his letters "fail[ed] to contain an adequate written explanation with citations to objective evidence or treatment protocol." (*Id.*) Further, he "failed to set forth, in either of his statements, an opinion containing a specific function-by-function assessment." (*Id.*) Judge Moore also gave "no weight" to opinion statements by doctors who opined as to Behnam's purported narcolepsy which was diagnosed after the Relevant Period. (*Id.* at 30–31 (citing *id.* at 263–266, 774–776, 793–795).) She further gave no weight to emergency room discharge instructions from two hospital visits on September 9, 2017 and April 4, 2022 which advised Behnam to avoid stressors following reported chest pain. (*Id.* at 31.) The Court notes that these emergency room visits occurred well more than a decade after Behnam's eligibility period in mid-2005 through 2006—the Relevant Period.

At Step Four, Judge Moore concluded that Behnam had no past relevant work. (*Id.* at 32 (citing 20 C.F.R. § 404.1565).)

Finally, at Step Five, Judge Moore heard testimony from a vocational expert ("VE") and concluded that "there were jobs that existed in significant numbers in the national economy" that Behnam could have performed. (*Id.* (citing 20 C.F.R. §§ 404.1569, 404.1569a).) The impartial VE

6

testified that the representative jobs Behnam could perform, consistent with Judge Moore's RFC, included hand packer, laundry laborer, and labeler. (*Id.* at 33.) Judge Moore ultimately concluded that "considering [Behnam's] age, education, work experience and residual functional capacity, [Behnam] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id.*) Thus, Judge Moore concluded that Behnam was not under a disability during the Relevant Period. (*Id.* (citing 20 C.F.R. § 404.1520(g)).)

## II.     LEGAL STANDARD

### A.     STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin,* 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford,* 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38

(3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B.    ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.,* 931 F.3d 198, 201 (3d Cir. 2019).

## III.    DISCUSSION

Plaintiff does not appeal any discrete aspect of Judge Moore's decision. Plaintiff instead

attacks the factual underpinnings of Judge Moore's decision generally, arguing that she "entirely disregarded" relevant evidence and otherwise failed to assign evidence favorable to Plaintiff the proper weight. (*See generally* ECF Nos. 5, 8.) He also argues the VE and Judge Moore did not fully consider the extent of his RFC limitations at Step Five. (*Id.*) The Court considers these arguments in turn but ultimately finds that substantial evidence supports Judge Moore's finding of non-disability. *See Zirnsak*, 777 F.3d at 610; *Fargnoli*, 247 F.3d at 38.

A.    FACTS PLAINTIFF ALLEGES JUDGE MOORE "DISREGARDED" OR IMPROPERLY WEIGHED

Plaintiff points the Court to cherry-picked facts he believes Judge Moore to have overlooked entirely, including:

- "Plaintiff testified that he had also lost his job as a result of the destruction of the PATH train, a job which Plaintiff described as the 'best job he had ever had.'" (ECF No. 5 at 20 (citing AR at 60).)

- "Plaintiff testified that his daughter's hospitalization was a result of a car accident, whereas the objective medical evidence demonstrates that his daughter's hospitalization was the result of anorexia and cutting, and that she was hospitalized for two (2) months." (*Id.* at 21 (citing AR at 1105).)

- Plaintiff "testified that as a result of his declining mental state, he gave up his employment search, and that he was 'miserable' and 'suicidal'" and that "despite his inability to manage his affairs, Plaintiff testified that his wife and daughter were able to take care of him." (*Id.* (citing AR at 61–62).)

- "[A]fter his wife left him in 2007, Plaintiff attempted suicide in 2008, was in a coma for three days and was in the ICU for fifteen days." (*Id.* at 22 (citing AR at 65).)

- "None of [Plaintiff's] 'promising' interviews led to employment, indicating a failure to perform during those interviewing opportunities." (*Id.* at 23.)

- "While there were times in which Plaintiff was able to carry out certain very limited activities without the hinderance of his disability (going to parks, potentially going to interviews), there are many noted times in which Plaintiff demonstrates a complete inability to function in a manner that would allow him to be gainfully employed. Without the assistance of his wife, Plaintiff was continuously late for treatment sessions." (*Id.* at 27 (citing AR at 1113–1116).)

While Plaintiff incorrectly asserts that Judge Moore "entirely disregarded" relevant

evidence (ECF No. 8 at 6), "[a] written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004); *Davison v. Comm'r of Soc. Sec.*, No. 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements."). Here, all that Judge Moore was required to ensure was that there was "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Many of the facts Plaintiff raises *support* Judge Moore's determinations. For example, with respect to losing his "best job" in the aftermath of September 11, 2001, Judge Moore repeatedly credited Plaintiff's report that he had "severe depression after the 9/11 attacks." (AR at 22–25.) Judge Moore also credited Plaintiff's testimony that when he went out during the Relevant Period, it was "with his then wife." (*Id.* at 22–24.) Plaintiff's single instance of misremembering the reason behind his daughter's hospitalization is only further support for Judge Moore's finding that Plaintiff had a "moderate limitation in the area of understanding, remembering, or applying information."[6] (*Id.* at 23.) Judge Moore even addressed Plaintiff's failure to appear at particular counseling sessions in 2003:

> It is also noted, assuming, for argument's sake that the "no shows,"
> cancellations, and treatment gaps were due to mental health
> symptoms, the record, nonetheless, fails to document any noted
> emergency room presentations or hospitalizations prior to the date
> last insured other than the above-stated hospitalization in 1984[].

---

[6] Plaintiff appears to mischaracterize his own testimony here. Behnam's testimony reads, "[a]nd also, simultaneously my daughter had just got her driver's license the first week she totaled my car, and she went to hospital, *and she became depressed, and she was hospitalized*." (AR at 62–63 (emphasis added).) Behnam clearly draws a connection between his daughter's mental health and her hospitalization, consistent with his reports closer-in-time to the hospitalization. (*See id.* at 1105.)

> The record also fails to document any alleged sleepiness or alleged difficulty with memory, attention/concentration, or social interaction that hindered or prevented the completion of any MHA sessions that [Behnam] did attend through the date last insured (id.)

(*Id.* at 29.) It is worth noting that these purported missed counseling sessions and Plaintiff's later reported suicide attempt in 2008 also fall well outside the Relevant Period. What's more, as a matter of law, Plaintiff's own subjective complaints "cannot alone establish disability." *Gantt v. Comm'r Soc. Sec.*, 205 F. App'x 65, 67 (3d Cir. 2006) (citing 20 C.F.R. § 404.1529(a)).

As for the facts that Plaintiff acknowledges Judge Moore *did* consider, he contends a number of them were given improper weight. For example, Plaintiff argues that Judge Moore placed improper weight on Plaintiff's testimony that he was doing "better" in 2005—during the Relevant Period—than in 2001. (*See* ECF No. 5 at 23–24, 26 ("[T]he ALJ puts tremendous weight on the insistence that Plaintiff was 'better' in 2005 than he was in 2001."); ECF No. 8 at 7.) Further, Plaintiff disputes the weight Judge Moore placed on Plaintiff's ability to appear and testify before her. (ECF No. 5 at 25–26 ("These hearings hardly could form the basis for an opinion that Plaintiff could perform sustained work.").) Plaintiff essentially asks this Court to do what it cannot and will not do—re-weigh evidence. *Chandler*, 667 F.3d at 359.

Judge Moore considered the record in its totality in reaching her determination of non-disability. At Step Three, she found only "moderate" limitations after reviewing treatment records documenting Behnam's mental health and his own reports of symptoms. Judge Moore noted he was described as having a "mildly" anxious affect with an "aloof/emotional distanced" stance, but also that he exhibited "a willingness to learn," paid "rapt attention," and was in a more "stable, calmer, and euthymic mood with 'no flavor of hypomania.'"[7] (AR at 23–25 (citing *id.* at 1105–

---

[7] Plaintiff argues that it was "expressly noted in physician notes from 2005 that [P]laintiff 'swings from depression to what seems to be activation/hypomania.'" (ECF No. 5 at 27 (quoting AR at 1108).) He therefore takes issue that Judge Moore found a lack of hypomania during the Relevant Period. (*Id.*)

11

1106, 1108, 1110).) She also observed that these treatment records failed to document more severe symptoms like "a formal thought disorder," "homicidal ideation," or "deficits or abnormality in terms of alertness or orientation." (*Id.* at 23–25.)

With respect to the RFC determination, Judge Moore was clear that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* at 27 (citing 20 C.F.R. §§ 404.1529).) She also considered "opinion evidence." (*Id.* (citing 20 C.F.R. §§ 404.1527).) She found that the record "fail[ed] to document, through the date last insured, any emergency room presentations due to mental health or additional hospitalizations due to mental health" beyond his 1984 hospitalization. (*Id.* at 28.) Even so, Judge Moore credited Behnam's reports of mental health symptoms *prior* to the Relevant Period. (*Id.* at 29.) Yet, she could not ignore that Behnam reported feeling "better" in 2005 than in 2001 and that he was able to go out with his wife and apply for "promising" jobs. (*Id.* (citing *id.* at 64).)

Finally, at Step Five, Judge Moore determined the VE "was well qualified to testify as to work-related decisions, assembly line and production rate pace work, work in tandem, customer service work, social interaction, and changes in the work setting and work processes based on this expert's professional experience, education, and training." (*Id.* at 33.) She ultimately concluded that "considering [Behnam's] age, education, work experience and residual functional capacity, [Behnam] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id.*)

In arguing both that Judge Moore improperly disregarded and inappropriately weighed

---

However, the record is clear that the references to "activation/hypomania" come from a counseling session dated February 3, 2005. (*See* AR at 1108.) By February 10, 2005, however, counseling session notes indicate Plaintiff was showing "no flavor of hypomania." (*See id.* at 1110.) Judge Moore's finding of a lack of hypomania is thus supported by substantial evidence within the record.

facts, Plaintiff does not explain how the facts he himself raises and weighs would change the ultimate outcome in this matter. *See N.V. v. Comm'r of Soc. Sec.*, No. 23-1888, 2024 WL 124628, at *2 (D.N.J. Jan. 11, 2024) ("Plaintiff . . . bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability."). It is evident to the Court there would be no change in outcome. To be clear, Judge Moore was tasked with determining the existence of a disability during a time period that ended sixteen years prior to her decision and for which there were *zero* documented treatment records from the Relevant Period.[8] Even so, in considering treatment records from both before and after the Relevant Period, as well as Behnam's own reports of symptoms, Judge Moore appropriately analyzed Plaintiff's disability application through each of the required steps. Her finding of non-disability was supported by substantial evidence.

## B.    JUDGE MOORE'S STEP FIVE DETERMINATION

In making her determination at Step Five, Judge Moore heard testimony from an impartial VE who concluded that Behnam could perform the jobs of hand packer, laundry laborer, and labeler. (AR at 33.) At the hearing, the VE clarified how she understood Behnam's RFC limitation of "[n]o assembly line or production rate pace work":

> I interpreted that as externally paced work where you're working in a line, you have to keep up with a machine, the pace of your work determines the pace of other workers. So, all work has some productivity levels that these would be again with your – a bench labeling items, if you're hand packing items, if you're folding laundry – you know, there's a productivity expectation over the day but it's not eternally paced, and you got to keep up with the line or

---

[8] Plaintiff claims "treatment records during the relevant time period were provided." (ECF No. 8 at 3.) Plaintiff cites the Court to the MHA Notes, which span from April 2003 through October 2003, (AR at 1076, 1104), then January 2005 through February 2005, (*id.* at 1110), and then from October 2008 through January 2018 (1111–1308). In contradiction to Plaintiff's claim, none of these records fall within the Relevant Period of May 15, 2005 through December 31, 2006.

you're pacing other workers.

(*Id.* at 51–52.)

Plaintiff argues that Judge Moore did not consider whether Plaintiff could meet the productivity expectations referenced by the VE in her testimony. (ECF No. 5 at 25.) However, Judge Moore explicitly limited Plaintiff's RFC to include "*no assembly line or production rate pace work.*" (AR at 27 (emphasis added).) It is clear both the VE and Judge Moore considered Plaintiff's productivity within the context of the limitations Judge Moore found supported by substantial evidence; namely, that Plaintiff could not work on an assembly line or perform production rate pace work. *See Rutherford*, 399 F.3d at 554 ("[T]he ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*.").

Plaintiff also baselessly suggests "that all forms of employment require some level of supervision and sustained effort" without citation to any applicable Administration regulation, expert analysis, or case law. (ECF No. 5 at 25.) He argues that both the VE and Judge Moore failed to consider that "due to the Plaintiff's severe mental health condition, he is unable to interact with other people on a sustained basis." (*Id.*) Plaintiff's argument here is without merit. Judge Moore adequately conveyed to the VE Plaintiff's credibly established limitations, which included the limitation of "[o]ccasional interaction with co-workers and supervisors." (AR at 47); *see Rutherford*, 399 F.3d at 554. Judge Moore also made an explicit finding with respect to Plaintiff's ability to be supervised at Step Three: "In interacting with others, [Behnam] had a moderate limitation. This area refers to the abilities to relate to and work with supervisors, co-workers, and the public." (AR at 23.) Plaintiff's arguments here do not support remand.

Ultimately, Judge Moore's finding of non-disability was supported by substantial evidence. Plaintiff's contentions on appeal do not convince the Court otherwise. Accordingly, the Commissioner's decision is **AFFIRMED**.

15

## CONCLUSION

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED.** An

appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: April 9, 2025